# EXHIBIT 1

| | |
|---|---|
| **STATE OF NORTH CAROLINA** | File No. 18 CVS 22611 |
| _____MECKLENBURG_____ County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| | |
|---|---|
| Name Of Plaintiff<br>Aaron Phifer | **APPLICATION AND ORDER<br>EXTENDING TIME TO<br>FILE COMPLAINT** |
| **VERSUS** | |
| Name Of Defendant<br>City of Charlotte | G.S. 1A-1, Rule 3 |

## APPLICATION

The undersigned requests permission to file a complaint in this action within twenty (20) days of any order granting this Application, as provided in Rule 3 of the Rules of Civil Procedure. The nature and purpose of the action are:

Name And Purpose Of The Action

Violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., 42 U.S.C § 1981, and 42 U.S.C. § 1983

| Date | Signature | |
|---|---|---|
| 11-26-2018 | _WB Maloney_ | ☐ Applicant<br>☒ Attorney For Applicant |

## ORDER

The Court states that the nature and purpose of this action are as set forth above.

Therefore, it is ORDERED that permission is granted to the applicant to file a complaint in this action up to and including the date shown below.

| File Complaint On Or Before | Date Of Order |
|---|---|
| 12-16-2018 | 11-26-18 |
| _(Date must be within 20 days of date of Order.)_ | Signature<br>☒ Assistant Clerk Of Superior Court  ☐ Clerk Of Superior Court |

**NOTE:** _Under Rule 3 of the Rules of Civil Procedure, upon entry of this Order, a summons shall be issued and the summons and a copy of this Order must be served in accordance with the provisions of Rule 4. A complaint must be filed in this action within the period provided above and that complaint must be served in accordance with the provisions of Rule 4 or by registered mail if the plaintiff so elects. If a complaint is not filed within the above period, the action shall abate._

# STATE OF NORTH CAROLINA

__MECKLENBURG__ County

File No. 18 CVS 22611

Film No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff

Aaron Phifer

**VERSUS**

Name Of Defendant(s)

City of Charlotte

**CIVIL SUMMONS**
**TO BE SERVED WITH**
**ORDER EXTENDING**
**TIME TO FILE COMPLAINT**

G.S. 1A-1, Rule 4

| TO: | TO: |
|---|---|
| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| City of Charlotte | |
| Attn: Marcus Jones, City Manager | |
| 600 East 4th Street | |
| Charlotte            NC   28202 | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or the plaintiff's attorney within thirty (30) days after you have been served with the complaint as authorized in the attached order. You may serve your answer by delivering a copy to the plaintiff or the plaintiff's attorney or by mailing a copy to one of them at his/her last known address.

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date 11-26-18 | Time 4:32 | ☐ AM ☒ PM |
|---|---|---|---|
| Margaret B. Maloney | Signature | | |
| Maloney Law & Associates, PLLC | | | |
| 1824 East Seventh Street | ☐ Deputy CSC    ☒ Assistant CSC    ☐ Clerk Of Superior Court | | |
| Charlotte            NC   28204 | | | |

AOC-CV-102, Rev. 1/10
© 2010 Administrative Office of the Courts

(Over)

| RETURN OF SERVICE |
|---|

I certify that this Summons and a copy of the Order were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of this Summons and Order.

☐ By leaving a copy of this Summons and Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Summons and Order to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service Accepted By Defendant

| Date Accepted | Time Served ☐ AM ☐ PM | Signature |
|---|---|---|

☐ Other Manner Of Service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of this Summons and Order.

☐ By leaving a copy of this Summons and Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Summons and Order to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service Accepted By Defendant

| Date Accepted | Time Served ☐ AM ☐ PM | Signature |
|---|---|---|

☐ Other Manner Of Service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Date Received | Name Of Sheriff |
|---|---|---|
| Paid By | Date Of Return | County |
| | | Deputy Sheriff Making Return |

AOC-CV-102, Side Two, Rev. 1/10
© 2010 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

MECKLENBURG  County

File No.
18CVS22611

Film No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff

Aaron Phifer

**VERSUS**

Name Of Defendant

City of Charlotte

## DELAYED SERVICE
## OF
## COMPLAINT

G.S. 1A-1, Rules 3 & 4

| TO: | TO: |
|---|---|
| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| City of Charlotte | |
| Attn: Marcus Jones, City Manager | |
| 600 East 4th Street | |
| Charlotte          NC  28202 | |

You are being served with a copy of the complaint in this action, the delayed filing of which was ordered when the summons was issued. You must:

1. Serve a copy of your written answer to the complaint upon the plaintiff or the plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or the plaintiff's attorney or by mailing a copy to one of them at his/her last known address.

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date 12.17.18 | Time 4:46 | ☐ AM ☒ PM |
|---|---|---|---|
| Margaret B. Maloney | | | |
| Maloney Law & Associates, PLLC | Signature | | |
| 1824 East Seventh Street | | | |
| Charlotte          NC  28204 | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | | |

## RETURN OF SERVICE

I certify that this Document and a copy of the Complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Name Of Defendant |
|---|---|
| | |

☐ By delivering to the defendant named above a copy of this Document and Complaint.

☐ By leaving a copy of this Document and Complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Document and Complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service Accepted By Defendant

| Date Accepted | Signature |
|---|---|
| | |

☐ Other Manner Of Service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Name Of Defendant |
|---|---|
| | |

☐ By delivering to the defendant named above a copy of this Document and Complaint.

☐ By leaving a copy of this Document and Complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Document and Complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service Accepted By Defendant

| Date Accepted | Signature |
|---|---|
| | |

☐ Other Manner Of Service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Date Received | Name Of Sheriff |
|---|---|---|
| $ | | |
| Paid By | Date Of Return | County |
| | | |
| | | Deputy Sheriff Making Return |

AOC-CV-103, Side Two, Rev. 3/98
© 1998 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

AARON PHIFER,

            Plaintiff,

v.

CITY OF CHARLOTTE,

            Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-22611

2018 DEC 17 P 12:45

**COMPLAINT**
**(Jury Trial Demanded)**

COMES NOW Plaintiff Aaron Phifer ("Phifer" or "Plaintiff"), complaining of Defendant City of Charlotte and alleges as follows:

## INTRODUCTION AND NATURE OF ACTION

1.      Aaron Phifer is a black male of African American descent from a family of dedicated Charlotte Fire Department ("CFD") firefighters. His mother, Captain Sylivia Smith-Phifer ("Captain Smith-Phifer"), a 26 year veteran of the CFD, made history as the first black female Captain. His father, Jeffrey Phifer, is a Fire Engineer and has served with CFD for 28 years. Phifer has applied to become a firefighter several times, has passed all the written and physical exams and interviews, but has never been hired because of CFD's deeply ingrained culture of racism and retaliation.

2.      Phifer has not been hired as a firefighter and has been subjected to severe damage to his reputation, education, and career because he is Black/African American and because his mother, Captain Smith-Phifer, spoke out and advocated for diversity and inclusion as well as equal opportunity and equal terms and conditions of employment for Black/African American firefighters, objected to the corrupt acts of CFD leadership including manipulation of the promotional processes and exam cut off scores, made various complaints up the CFD Chain of

1

Command to the Fire Chief, with City Management, City and CFD HR, the Civil Service Board, and EEOC alleging the above as well as the pattern and practice of continuing disparate treatment and disparate impact against Black/African Americans, especially Black/African American females, and involved the NAACP President who reported these issues to the City Manager, City Council members, and the public.

3.     Phifer has been subjected to race and color discrimination and retaliation by association in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

## PARTIES

4.     Phifer is an adult citizen and resident of Charlotte, Mecklenburg County, North Carolina.

5.     Upon information and belief, Defendant City of Charlotte (the "City" or "Defendant") is organized by City Charter under §160A of the North Carolina General Statutes with its principal office and place of business in Charlotte, Mecklenburg County, North Carolina.

6.     Defendant maintains and administers a fire department known as the Charlotte Fire Department ("CFD" or "Fire Department").

7.     To the extent it is applicable, Defendant has adopted a plan of insurance pursuant to N.C. Gen. Stat. § 160-A-485 and has waived its immunity from civil liability.

## JURISDICTION AND VENUE

8.     The unlawful practices alleged in this complaint were committed in Mecklenburg County, North Carolina.

9.     Jurisdiction and venue are proper in this court pursuant to N.C. Gen. Stat. §§ 1-75.4 and 1-79 and 29 U.S.C. § 2617(a)(2).

2

## ADMINISTRATIVE PROCEDURES

10.     Plaintiff timely submitted a charge of discrimination ("Charge") against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about November 15, 2017.

11.     On or after August 28, 2018, Plaintiff received a Notice of Right to Sue from the EEOC entitling him to commence a Title VII action within ninety (90) days of receipt of that notice.

12.     Plaintiff timely filed an Application and Order Extending Time to File Complaint on November 26, 2018.  N.C. Gen. Stat. § 1A-1, Rule 3.

13.     Plaintiff now timely files this Complaint.

14.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## CITY/CFD HISTORY

15.     The CFD serves the City of Charlotte and provides fire protection for approximately 800,000 residents living in a 300 square-mile area, with over 1,000 fire suppression personnel.

16.     The ranks within the CFD in order of ascension are Recruit, Firefighter 1, Firefighter 2, Fire Engineer, Captain, Battalion Chief, Division Chief, Deputy Chief and Fire Chief.

17.     The City's fire department has a history of ingrained racism against African Americans and retaliation for complaints regarding racism against African Americans.

18.     In its earliest years, the City's fire brigade consisted of volunteer companies segregated on the basis of race.  Once the City's firefighters were paid, Black/African Americans were excluded.

3

19.     Although the law changed in 1947 so that the CFD could legally hire Black/African American firefighters, the CFD did not actually hire any Black/African Americans until 1967—a full underline years later.

## DISCRIMINATION AND RETALIATION

20.     In 1999, Hannan became the Administrative Deputy Chief under Fire Chief Luther Fincher, assuming responsibility for the CFD recruitment and promotional process when Division Chief David Taylor retired.

21.     Upon information and belief, under Chief Fincher, the CFD was approximately 85% white and approximately 15% Black/African American.

22.     With Hannan as the Administrative Deputy Chief, the overall percentage of Black/African Americans in the CFD dropped from 15% in 2000 to 11% in 2007.

23.     Upon information and belief, in 2000, the area served by the CFD was 27.9% Black/African American.

24.     Upon information and belief, Hannan was selected for promotion by Chief Fincher to deputy without the minimum qualifications having served as Battalion Chief for atleast 3 years, as part of unlawful favoritism instituted by Chief Fincher, Hannan continued to use unlawful favoritism, which was not merit based, in the recruiting, assignment, and promotional processes, which included discriminatory treatment and adverse impact on Blacks/African Americans.

25.     Chief Hannan became Fire Chief in 2007.  Upon information and belief, under Chief Hannan, diversity in leadership with Black/African American employees decreased dramatically and moved further away from reflecting the racial demographics of Charlotte.

26.     Upon information and belief, the CFD has summarily denied qualified, dedicated Black/African American firefighter applicants without an adequate basis.  Indeed, it appears as if

the CFD is actively looking for reasons to deny opportunities to Black/African American applicants.

27.     The City's 2017 Performance Report for community safety (police and fire departments) sets goals including developing a workforce that is reflective of Charlotte's demographics; however, the Report only measures the applicant pool of women and minorities[1] of CMPD and does not include CFD.

28.     Additionally, the City's diversity goals are fatally flawed by focusing on applicant pools instead of recruit class numbers because the applicant pool does not reflect the number of recruits that ultimately make it through the application process. For example, in 2015 the applicant pool was comprised of 35% women and minorities while the recruit class was comprised of 40.4% women and minorities. Yet in 2016, the applicant pool was 33% women and minorities while the recruit class was only 22.9% women and minorities.

29.     CFD's recruit classes for the last four years had the following percentages of women and minority recruits: 25% in 2015; 40.4% in 2016; 22.9% in 2017; and 29.7% in 2018. While all these numbers appear to exceed the goals, a closer look reveals that the City is grouping women and minorities into the same data point to bulk up the numbers and make it look like they are meeting their goals when, in fact, the recruit classes do not reflect the diversity of Charlotte.

30.     Separating women and minority recruits into three data points, 1) white females, 2) non-white females, and 3) non-white males, would allow the City to more effectively provide resources to help increase diversity in CFD to better reflect the community it serves. CFD has been unable to hire any significant number of female recruits of any race, but especially non-white

---

[1] The use of "women and minorities" here reflects the City grouping females and non-white males together into one data point when setting diversity performance measures.

females. In the last four years only one non-white female (Asian) recruit completed the recruit process.

31.     The numbers broken down by race and gender provide the following percentages of fire recruits:

    a.  In 2015: 20.3% non-white males; 4.7% white females; and 0% non-white females;
    b.  In 2016: 31.9% non-white males; 6.4% white females; and 0% non-white females;
    c.  In 2017: 20.8% non-white males; 2.1% white females; and 0% non-white females; and
    d.  In 2018: 26.6% non-white males; 1.5% white females; and 1.5% non-white females.

32.     In the last ten years, CFD has hired 741 recruits. Out of the 741 recruits, approximately 95 were Black/African American males, which is less than 13%.

33.     According to the 2016 United States Census Bureau American Community Survey, the racial composition of Charlotte was 50.7% White, 35.3% Black or African American, 13.7% Hispanic or Latin American, 6% Asian, .3% Native American, .1% Native Hawaiian or Other Pacific Islander, and 2.8% two or more races.

34.     While the City claims to want a workforce reflective of the community's demographics, the numbers above indicate that the number of CFD recruits hired and promoted do not reflect Charlotte's diversity.

35.     The practices of CFD and the City discourage employees from bringing forward complaints or issues of discrimination, harassment, retaliation, and violations of procedural and substantive due process rights, and they contribute towards the racial disparaties in the hiring, recruitment, and promotion of minorities.

36.     The City has been on notice for years that third parties have investigated and reported on CFD's well known culture of fear and retaliation and the discriminatory treatment and

disparate impact against Black/African Americans, and the City commissioned and published the reports with those findings.

37.     Third parties have advised the City to take measures to "[e]nhance the department's efforts to attract and develop a workforce that is more representative of the population the department serves," but it has not taken adequate action to accomplish those goals."

## AARON PHIFER

38.     Phifer is the second of three children.  He graduated from West Charlotte Senior High School in June 2015 where he was a member of the Gospel Choir and captain of the wrestling team.  Phifer started wrestling at age 6.

39.     As a high school junior Phifer participated on the rowing team for Lake Norman Rowing Club.  In October 2013, Phifer was one of eight students chosen from his junior class to participate in the International Conference on Urban Education (ICUE - a partnership with UNCC), where he traveled to Montego Bay Jamaica in October 2014 to present his senior graduation paper.

40.     Phifer attends Mount Carmel Baptist Church.  As a child he participated in the youth ministry.

41.     Phifer was also a Boy Scout.  He started the Boy Scouts as a Tiger Cub at age 6 and achieved the rank of Silver Palm Eagle Scout by the time he graduated from high school.  He served as a youth camp counselor for the Boy Scouts summer camp, Camp Grimes and Belk Cub Scout Camp.  Phifer has taken several leadership training classes within the Boy Scouts.

42.     Such training includes but is not limited to S.E.A.L.S (Scouts Excited About Leadership Skills) and Top Gun NYLT (National Youth Leadership Training).

43.     Phifer also was a member of the Boy Scouts Order of the Arrow (OA) and he attended the 2013 Boy Scouts National Jamboree.

44.     During Phifer's senior year in high school he began working for Carowinds Theme Park. Like CFD, employees of Carowinds are subject to random drug test on a regular basis which Plaintiff always passed. After his first year at Carowinds Phifer was promoted to supervisor of park services and he currently maintains this position. Phifer has worked to finance his college education. During the winter months, he works two jobs and continues to attend college classes full time. Phifer began his college education at Belmont Abbey College where he received a partial wrestling scholarship. His major was Biology.

45.     Phifer transferred and gave up his wrestling scholarship to attend Central Piedmont Community College (CPCC) with hopes of becoming a Charlotte firefighter. He currently attends the University of North Carolina at Charlotte and is majoring in nursing, relevant to work fire fighters do as emergency medical technicians. In what little spare time he has, he serves as the assistant varsity wrestling coach and the head JV coach for Olympic High School wrestling team. This is a non paid position. Phifer does all of this while maintaining a 3.6 GPA.

46.     Throughout his youth Phifer has participated in numerous Charlotte Fire Department events with his parents. Some of these events include but are not limited to CMPD'S Police Explorer's Christmas Project (his mother is the CFD Coordinator), the 911 Memorial Stair Climb, the Burned Children's Fund Pancake Breakfast, and the Charlotte Heritage (parents are CFD Coordinators).

## FAILURE TO HIRE PHIFER

47.     Phifer repeatedly applied for positions with the CFD as a firefighter, but has not been hired based on his race and color, and in retaliation for his association with his mother,

Captain Smith-Phifer, who is known for her advocacy in equal treatment, recruitment, and promotions of Black/African Americans and women within the CFD, and who has engaged in various protected activities over the years, including protected speech about discrimination treatment and adverse impact against African Americans within the CFD in recruitment, hiring, promotions, and retaliation, involvement of the NAACP, and filing grievances and EEOC charges about concerns.

## 2016 Firefighter Hiring Process

48.     CFD's hiring process has nine stages: (1) online application; (2) written test; (3) Candidate Physical Abilities Test ("CPAT"); (4) application packet review and preliminary interview; (5) panel interview; (6) polygraph examination; (7) personal history background investigation; (8) pre-employment medical examination and drug screening; and (9) civil service certification.

49.     In December 2015, Phifer took the written test and was advised that he successfully passed it in January 2016.  In April 2016, Phifer passed the Candidate Physical Abilities Test ("CPAT") with one minute and thirty seconds remaining.  He was among 189 candidates who proceeded to the stage four preliminary interview.

50.     On June 13, 2016, Phifer completed his preliminary and was told they would get back in touch with him over the next few weeks.

51.     Upon information and belief, on July 1, 2016, Phifer's mother, Smith-Phifer, filed a race and gender discrimination complaint with the City's Director of Community Relations with the subject, "Discrimination Complaint against the Charlotte Fire Department & Chief Jon Hannan," which was passed to City HR.

9

52.     Upon information and belief, in or around August 2016, the City and CFD HR discussed Smith-Phifer's complaint with Deputy Chief Gordon, who is close to Chief Hannan. Upon information and belief, Smith-Phifer's complaint was not kept confidential and it was shared with Chief Hannan along with other members of the command staff and fire department.

53.     Upon information and belief, without giving Smith-Phifer an opportunity for a hearing to present evidence, City HR denied her complaint and closed its investigation on or about August 24, 2016, claiming it found no evidence of race or gender discrimination.

54.     Phifer inquired about his status with the hiring process and was then given a panel interview with Deputy Chief Kevin Gordon (white) ("Deputy Chief Gordon") and Deputy Chief Pete Key (Black/African American) ("Deputy Chief Key").

55.     Phifer passed the panel interview at stage five and moved to stage six, the polygraph.

56.     Deputy Chief Gordon then scheduled Phifer's polygraph for August 29, 2016.

57.     Phifer's polygraph results came back inconclusive. A polygraph is a machine that measures and records several physiological indices such as blood pressure, pulse, respiration, and skin conductivity while a person is asked and answers a series of questions. A number of factors could cause an inconclusive result and have nothing to do with Phifer's job qualifications and ability to train to be a firefighter.

58.     In September 2016, Chief Hannan requested a meeting with Phifer. When they met, Chief Hannan told Phifer that "something did not seem right" with the polygraph and falsely accused Phifer of smoking marijuana and implied that Phifer must not be telling the truth because the test came back inconclusive, which is absurd.

59.     Phifer asked to retake the polygraph.  He also offered to take a drug test and share his historical drug test results from his employment with Carowinds.

60.     Phifer was not given the opportunity to retake the polygraph test because Hannan refused to let him do so.  It does not make any sense that he would have successful interviews with multiple CFD personnel, but not be allowed to proceed with the hiring process because of an inconclusive polygraph without the opportunity to retake it.

61.     Chief Hannan did not want to recruit Phifer because of his race, Black/African American, and in retaliation for his association with Smith-Phifer who engaged in protected activity during this time.

62.     Upon information and belief, Phifer was treated less favorably than white candidates on the polygraph portion of the exam.  Upon information and belief, whites with inconclusive polygraphs have been allowed to retake the test.

### 2017 Firefighter Hiring Process

63.     In November 2016, Phifer submitted a new application to CFD to participate in the 2017 hiring process.

64.     The education requirement to apply as a firefighter for CFD is a high school diploma or GED.  A college education or degree is not required.  An Associate or Bachelor's degree is only required for positions of Captain and above, and for a salary increase.

65.     After passing the written test and CPAT, Phifer received a letter that his application was denied for failure to provide a college transcript with his application even though a college education is not a job requirement to become a recruit or firefighter.  When Phifer inquired about his denial, he was told that CFD only received a college transcript from CPCC, but not Belmont Abbey.  Phifer informed CFD that he did in fact turn in both transcripts with his application.

66.     Phifer requested to resubmit the transcript, but was not allowed to do so.

11

67.     College transcripts were not required to be submitted with the application during the 2016 hiring process, and upon information and belief, were not required to be submitted during the hiring processes prior to 2016.  Upon information and belief, CFD added the college transcript requirement to the application requirements during the 2017 hiring process.

68.     Firefighter applicants are required to place a hard copy of their completed application packages in an open and unsecured cardboard box on the front desk at CFD headquarters, which is open to the public and sitting out in plain view.  Upon information and belief, the box, which is marked as the application submission box, contains applicants' confidential personnel information including social security numbers and dates of birth.  Upon further information and belief, the box is not monitored at all times and is only checked on periodically.

69.     Upon information and belief, CFD had notice of allegations regarding exam tampering and failure to secure boxes containing exams during the promotional process.

70.     The City and CFD are well aware that arbitrary application procedures have been misused within the City/CFD to create artificial barriers for African Americans and other minorities seeking employment as CFD recruits.

71.     The City/CFD unnecessarily and unfairly scrutinized Phifer because of his race and color, and in retaliation for his mother's complaints of race, color, and gender discrimination and retaliation.  The City/CFD was looking for any technicality, however small or arbitrary, to reject Phifer's application in both 2016 and 2017.

72.     The City/CFD has knowingly used arbitrary application processes and procedures to prevent Black/African Americans, including African American women, from becoming employed with the City/CFD.  The numbers and conduct above also reflect a pattern and practice

12

of intentional discrimination, disparate treatment, and disparate impact against Black/African Americans and African American women as well as retaliation against those who associate with people who engage in protected activity.

## CONCLUSION

73. Plaintiff has established *prima facie* cases of violations of Title VII, 42 U.S.C. §1981, and §1983.

74. Plaintiff reserves the right to sue officials and public employees in their official and individual capacities for intentional discrimination against him in violation of 42 U.S.C. §1981, and §1983 after obtaining discovery from the City/CFD.

75. The City's actions, as described throughout this Complaint, were willful and wanton, and evinced an intentional or reckless indifference to and disregard for the legal rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages against any individual defendants in their individual capacities who may be added to this lawsuit in an amount to be determined by the jury.

## COUNT I
### (Title VII, 42 U.S.C. § 2000e *et seq.* – Race and Color Discrimination, Discrimination and Retaliation by Association, and Failure to Hire against the City)

76. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

77. The CFD regularly employed more than fifteen (15) employees at all relevant times.

78. Plaintiff is a Black/African American male and is thus a member of a protected class based on his race and color.

79. Plaintiff has submitted multiple applications for employment to the City/CFD.

80. Plaintiff meets or exceeds all of the minimum requirements to be a CFD firefighter.

13

81.     As noted above, the CFD has a long history and pattern and practice of racial discrimination, retaliation, and failure to hire qualified Blacks/African American at the same rate as White/Caucasians. The Command Staff, including Former-Chief Hannan and some Deputy Chiefs had a well-known, deeply ingrained bias against Black/African Americans.

82.     The CFD, through its agents, employees, and supervisors, engaged in unlawful discrimination against Plaintiff based on his race and color.

83.     The CFD violated Title VII by treating Plaintiff differently than his similarly situated peers outside of his protected class during the hiring process by making false statements and assumptions about his applications, unnecessarily scrutinizing his applications for employment, looking for any arbitrary reason to reject his applications, allowing others to tamper with his application without providing him redress, repeatedly refusing to allow him to supplement or provide follow up information for his applications, and in other ways to be proven at trial.

84.     As a result of this race/color-selective and targeted discrimination, Plaintiff was not hired because of his race and color and his association with his mother who engaged in protected activity under Title VII.

85.     To the extent the City purports to have had legitimate, non-discriminatory reasons for not hiring Plaintiff, such reasons are pretexts for the true reasons, which are his race, color, and the legally protected activities of his mother, Captain Smith-Phifer.

86.     While Plaintiff's 2016 application was pending, Captain Smith-Phifer filed a complaint of discrimination against the CFD.

87.     At the time, Captain Smith-Phifer's complaint was regarding discrimination directed towards Black/African Americans, particularly Black/African American women such as Smith-Phifer.

88.     Upon information and belief, as set forth above, there is a widespread belief among members of the CFD that any action deemed undesirable by certain members of the command staff, (here employess of discrimination by African Americans) will result in targeting and retaliation against those who complain and those who associate with those who complain.

89.     CFD manipulated and used the hiring and promotional process to engage in bias, nepotism, and more favorable treatment of white males, as well as retaliation against those who speak out about discrimination against African Americans by the CFD including those who associate with those who speak out.

90.     CFD management targeted Plaintiff based on his race and color and in retaliation of his mother, Captain Smith-Phifer, filing complaints of discrimination within  and outside the City and the CFD, advocating for equal opportunity and equal terms and conditions of employment for Black/African American firefighters, advocating for equal opportunity for special assignments for Black/African American firefighters, meaningful training on diversity related to race/color, advocating for accountability for recruiting, mentoring, retaining, training, and promoting Black/African American employees within the CFD, involving the NAACP which shared Captain Smith-Phifer's concerns with the City Manager, City Council, the Media, and the public.

91.     The City had knowledge of and ratified the acts of unlawful race and color discrimination and retaliation against Plaintiff and Captain Smith-Phifer's advocacy for equal opportunities for Black/African American employees and failed to take corrective action to remedy the discrimination and retaliation against African Americans.

92.     A causal connection exists between Captain Smith-Phifer's protected activities and the adverse actions taken against Plaintiff.

93.     There is compelling evidence of willful and intentional discrimination.

94.     The City's conduct, as described above, was without justification or excuse, is reprehensible, and occurred despite any efforts to prevent, halt, and reverse the discrimination and retaliation.

95.     As a result, Plaintiff is entitled to recover from the City damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; employment with CFD; injunctive relief to preserve the status quo and to deter similar misconduct in the future; back pay; front pay; fringe benefits; damages for emotional distress; pre- and post-judgment interest; reasonable attorney's fees; and the costs of this action.

96.     As a direct and proximate result of said violations, Plaintiff has suffered and incurred substantial damages, and is entitled to punitive damages and equitable relief, as more fully described below.

**COUNT II**
**(42 U.S.C. §1981 – Race and Color Discrimination, Discrimination and Retaliation by Association, and Failure to Hire against the City)**

97.     The allegations of the previous paragraphs are realleged and incorporated herein by reference.

98.     The City/CFD is responsible for the acts of race discrimination by both supervisory and nonsupervisory employees against Plaintiff because the City has been on notice of the problems with race discrimination against Black/African Americans in hiring, recruitment, promotions and other developmental opportunities for training, special assignments, and projects within the CFD but has chosen not to properly investigate or take appropriate action related to training, adoption, and enforcement of appropriate policies and procedures, grievances, and appeals within the City, CFD, and Civil Service Board.

99.     The City/CFD has been aware of the issues with hiring and recruitment and how to deal with them as a result of prior lawsuits, grievances, EEOC Charges, consultant recommendations, City data. The City including Legal, HR, the City Manager, the Mayor, City Council, and CFD know how to deal with and respond to these issues because they have knowledge and access to information from other City departments, external organizations, and consultants, and have chosen not to act, to allow regression, and are deliberately indifferent. They also know based on past lawsuits against the City/CFD related to race and color discrimination and retaliation.

100.    Plaintiff reserves the right to sue officials and public employees in their official and individual capacities for intentional discrimination against him in violation of Section 1981 after obtaining discovery from the City/CFD.

101.    The City/CFD, acting under color of law denied Plaintiff his right to: full and equal benefit of the laws; freedom from racial discrimination in the recruitment and employment relationship; and enjoyment of all benefits, privileges, terms, and conditions of the recruitment and employment relationship.

102.    The City/CFD's acts were the result of discriminatory intent and were done in known violation of Plaintiff's legal rights, without good faith, and have directly and proximately caused Plaintiff's injuries.

103.    The rights and privileges denied to Plaintiff have been afforded to similarly situated persons of a different race and color.

104.    As a result, Plaintiff was deprived of the rights afforded to other similarly situated persons outside of his protected classes and was denied employment based on his race and color and in retaliation for his association with his mother.

105. Senior management of the CFD have manipulated and used the hiring process to engage in bias, nepotism, and favoritism, resulting in discriminatory treatment and retaliation against Black/African Americans, including Plaintiff.

106. A causal connection exists between Plaintiff's protected activities and the adverse actions taken against him.

107. To the extent the City purports to have had legitimate, non-discriminatory reasons for taking adverse actions against Plaintiff, such reasons are pretexts for the true reasons, which are his race, color, and his mother's protected activities.

108. The City's conduct, as described above, was without justification or excuse, is reprehensible, and occurred despite Plaintiff's efforts to prevent, halt, and reverse the discrimination and retaliation.

109. As a direct and proximate result of said violations, Plaintiff has suffered and incurred substantial damages, and is entitled to punitive damages and equitable relief, as more fully described below.

## COUNT III
**(42 U.S.C. §1983 – Race and Color Discrimination, Discrimination and Retaliation by Association, and Failure to Hire against the City)**

110. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

111. The City/CFD acting under color of law engaged in a continuing pattern and practice of intentional race and color discrimination, and retaliation by association as set forth above. In doing so, the City/CFD has caused Plaintiff to suffer deprivation of his fundamental rights to due process and equal protection of the laws in violation of the Fourteenth Amendment and Section 1983.

18

112. The City/CFD acting under color of law, institute, authorize, tolerate, ratify, permit, and acquiesce in policies, practices, and customs which have denied Plaintiff's legal rights and have directly and proximately caused Plaintiff's injuries.

113. The City/CFD acted under color of law and with reckless or deliberate indifference to Plaintiff's constitutional rights and with malice as set forth above and below.

114. As a direct and proximate result of said violations, Plaintiff has suffered and incurred substantial damages, and is entitled to punitive damages and equitable relief, as more fully described below.

## DAMAGES AND INJUNCTIVE RELIEF

115. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

116. As a direct and proximate result of the City's unlawful actions, Plaintiff is entitled to recover from the City damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; employment with CFD; injunctive relief to preserve the status quo and to deter similar misconduct in the future; back pay; front pay; fringe benefits; damages for emotional distress; pre- and post-judgment interest; reasonable attorney's fees; and the costs of this action, pursuant to Title VII.

117. As a result, Plaintiffs are entitled to recover from the City, jointly and severally, damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; promotion; injunctive relief to deter similar misconduct in the future; back pay; front pay; damages for emotional distress; pre-

and post-judgment interest; reasonable attorney's fees; and the costs of this action, pursuant to 42 U.S.C. § 1988.

118. The City's actions, as described above, were willful and wanton, and evinced an intentional or reckless indifference to and disregard for the legal rights of Plaintiffs. Accordingly, each Plaintiff is entitled to punitive damages against any individual defendants in their individual capacities who may be added to this lawsuit in an amount to be determined by the jury.

119. Plaintiff requests declaratory and injunctive relief for the implementation of policies to address the ongoing violations of rights. This includes at a minimum: (1) requiring the City to adopt policies and procedures for the hiring process which comply with the requirements of procedural and substantive due process and do not discriminate based on race, color, or any other protected class; (2) requiring the City to adopt policies and procedures for appeals and grievances which comply with the requirements of procedural and substantive due process and do not discriminate based on race, color, or any other protected class and which afford an opportunity to a fair and impartial hearing; (3) requiring the City to monitor the hiring process, grievance, and appeals processes so that they are not prejudiced by conflicts of interest and personal agendas of Fire Department management and manipulation of policies and procedures to favor friends and relatives of Fire Department management or those who will not speak out or speak up against unlawful conduct in the workplace.

120. In addition, Plaintiff requests declaratory and injunctive relief, as well as compensatory damages to make him whole for the City's violation of his rights, including requiring the City to preserve the status quo until these matters can be thoroughly addressed in an effective manner; Plaintiff also requests back pay and fringe benefits.

121. As a result, Plaintiff is entitled to recover from the City damages in excess of

twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; promotion; injunctive relief to preserve the status quo and to deter similar misconduct in the future; back pay; front pay; fringe benefits; damages for emotional distress; pre- and post-judgment interest; reasonable attorney's fees; and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court as follows:

1.     Pursuant to Count I (Title VII, 42 U.S.C. § 2000e *et seq.* – Race and Color Discrimination, Discrimination and Retaliation by Association, and Failure to Hire against the City), that Plaintiff have and recover damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; employment with CFD; injunctive relief to deter similar misconduct in the future; back pay; front pay; fringe benefits; damages for emotional distress; pre- and post-judgment interest; reasonable attorney's fees; and the costs of this action;

2.     Pursuant to Count II (42 U.S.C. § 1981 – Race and Color Discrimination, Discrimination and Retaliation by Association, and Failure to Hire against the City), that Plaintiff have and recover damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; employment with CFD; injunctive relief to deter similar misconduct in the future; back pay; front pay; fringe benefits; damages for emotional distress; pre- and post-judgment interest; reasonable attorney's fees; and the costs of this action, pursuant to 42 U.S.C. § 1988;

3.     Pursuant to Count III (42 U.S.C. §1983 – Race and Color Discrimination, Discrimination and Retaliation by Association, and Failure to Hire against the City), that Plaintiff

have and recover damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; employment with CFD; injunctive relief to deter similar misconduct in the future; back pay; front pay; fringe benefits; damages for emotional distress; pre- and post-judgment interest; reasonable attorney's fees; and the costs of this action, pursuant to 42 U.S.C. § 1988;

4.      That this matter be tried by a jury;

5.      That Plaintiff be granted declaratory and injunctive relief prohibiting unlawful employment practices in violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; and

6.      That the Court grant such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted, this the 17th day of December, 2018.

**MALONEY LAW & ASSOCIATES, PLLC**

Margaret Behringer Maloney, N.C. Bar 13253
Jennifer Diane Spyker, N.C. Bar 46048
1824 E. Seventh Street
Charlotte, NC 28201
mmaloney@maloneylegal.com
jspyker@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiff*



7018 0360 0001 7136 1952



RECEIVED
DEC 2 1 2018
CITY MANAGER'S OFFICE

| 1 | $8.04 US POSTAGE 5 OZ FIRST-CLASS FLATS RATE | 062S0010184410 FROM 28204 |
| --- | --- | --- |
| | RETAIL | stamps.com 12/18/2018 |

## USPS FIRST CLASS MAIL®

Maloney Law & Associates, PLLC
1824 East Seventh Street
Charlotte NC 28204

0020

C002

**SHIP TO:** City of Charlotte
Attn: Marcus Jones, City Manager
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte NC 28202-2816

STATE OF NORTH CAROLINA ~~FILED~~ IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

COUNTY OF MECKLENBURG 2019 JAN -7 P 2: 54          18-CVS-22611

AARON PHIFER          MECKLENBURG COUNTY, C.S.C.

          Plaintiff, BY_____

v.                                                    **AFFIDAVIT OF SERVICE**

CITY OF CHARLOTTE,

          Defendant.

The undersigned, being first duly sworn, deposes and says:

1.       A copy of the Application and Order Extending Time to File Complaint and Civil Summons to be Served with Order Extending Time to File Complaint in this action were sent via USPS certified mail, return receipt requested, on November 29, 2018 to the City of Charlotte, attention Marcus Jones, City Manager, City of Charlotte, 600 E. Fourth Street, Charlotte-Mecklenburg Government Center, Charlotte, NC 28202. Such copies were in fact delivered to the City of Charlotte at the above-listed addresses on December 4, 2018, as evidenced by the delivery receipt attached hereto as **Exhibit A**.

2.       A copy of the Complaint and Delayed Service of Complaint in this action were sent via USPS certified mail, return receipt requested, on December 18, 2018 to the City of Charlotte, attention Marcus Jones, City Manager, City of Charlotte, 600 E. Fourth Street, Charlotte-Mecklenburg Government Center, Charlotte, NC 28202. Such copies were in fact delivered to the City of Charlotte at the above-listed addresses on December 21, 2018, as evidenced by the delivery receipt attached hereto as **Exhibit B**.

2.    Therefore, Defendant has been duly served in accordance with Rule 4 of the North Carolina Rules of Civil Procedure.

This, the 7th day of January, 2018.

MALONEY LAW & ASSOCIATES, PLLC

Margaret Behringer Maloney, N.C. Bar No. 13253
Jennifer Spyker, N.C. Bar No. 46048
824 E. Seventh Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
jspyker@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiffs*

Sworn to and subscribed before me,
This, the 7th of January, 2019.

Notary Public
My commission expires: May 6, 2019
[SEAL]

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **AFFIDAVIT OF SERVICE** was served by depositing same in the U.S. mail, postage prepaid and addressed as follows:

City of Charlotte
Attn: Marcus Jones, City Manager
Charlotte-Mecklenburg Government Center
600 E. Fourth Street
Charlotte, NC 28202

This the 7th day of January, 2019.

MALONEY LAW & ASSOCIATES, PLLC

Margaret Behringer Maloney, N.C. Bar No. 13253
Jennifer Spyker, N.C. Bar No. 46048
1824 E. Seventh Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
jspyker@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiffs*

# EXHIBIT A

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

City of Charlotte
Attn: Marcus Jones, City Mgr.
Char-Meck Gov't Center
600 E. 4th Street
Charlotte, NC 28202-2816

9590 9402 3922 8060 7469 15

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____  ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                DEC 04 201

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

DEC 04 2018

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7018 0360 0001 7136 1945

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt

# EXHIBIT B

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

City of Charlotte
Attn: Marcus Jones, City Manager
CharMeck Gov't Center
600 E. 4th St.
Charlotte, NC 28202-2816

9590 9402 3922 8060 7469 84

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery
DEC 2 1 2018

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

DEC 2 1 2018

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7018 0360 0001 7136 1952

PS Form 3811, July 2015 PSN 7530-02-000-9053
Domestic Return Receipt